## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF NEW YORK

JEREMIAH F. HERBERT,

                    Plaintiff,

          v.                                        9:23-CV-1472
                                                    (MAD/MJK)

L. DeROUCHIE, *et. al.*

                    Defendants.

JEREMIAH F. HERBERT, Plaintiff, *pro se*

KAITLIN VIGARS, ESQ., Assistant Attorney General, for Defendants

MITCHELL J. KATZ, United States Magistrate Judge

### MEMORANDUM-DECISION and ORDER

Plaintiff moves to compel the production of disciplinary records for Defendants Mayes, Richards, Spinner, Conners, DeRouchie, Palm and Moore. (Dkt. 54). Defendants filed a response objecting. (Dkt. 57). The Court directed that the disciplinary records be provided for *in camera* review. (Dkt. 61 and 65). Documents were received by the court on February 19, 2025. For the reasons that follow, Plaintiff's motion to compel the production of the disciplinary records of Defendants Spinner, DeRouchie, and Moore is granted.

In their reply, Plaintiff also "moves" to compel production of video footage and portions of DOCCS' employee manual. (Dkt. 59). Defendants respond at Dkt. 70 arguing that the request in a reply paper for the first time is not appropriate. The

1

Court agrees. Defendants also note that they have advised Plaintiff that the video and portion of the employee manual have been offered to be produced for a controlled review by Plaintiff which they have not requested. Defendants advise that they will, notwithstanding Plaintiff's failure to request a controlled review, arrange for a controlled review of the video and employee manual excerpt. Plaintiff's motion at Dkt. 59 is denied as mooted by Defendants' prior and renewed offer, and stated intention, to make available the video and manual excerpts for controlled review.

As a general proposition, several courts in this District have held that other complaints of misconduct against a particular defendant, either before or after the event which is the subject of a civil rights lawsuit, can be discoverable so long as the misconduct is similar to the constitutional violation alleged in the complaint or relevant to a defendant's truth or veracity. *See Simcoe v. Gray*, No. 10-CV-6531, 2012 WL 1044505, at *3 (W.D.N.Y. Mar. 28, 2012); *see also Linares v. Mahunik*, No. 9:05-CV-0625, 2008 WL 2704895, at *3 (N.D.N.Y. July 7, 2008); *Messa v. Woods*, No. 9:07-CV-0306, 2008 WL 2433701, at *3 (N.D.N.Y. June 12, 2008). The various views on such discovery is well summarized in the extensive decision of *Gross v. Lunduski*, 304 F.R.D. 136 (W.D.N.Y. 2014).

"Generally, the Court will direct the production of documents contained in the personnel file of an officer only if the documents are relevant and involved

disciplinary action taken against the officer." *Gagne v. Fix*, No. 11-CV-361A,

2015 WL 4648056, at *2 (W.D.N.Y. Aug. 5, 2015) (collecting cases including

*Crenshaw v. Herbert*, 409 F. App'x. 428, 430 (2d. Cir. 2011) (the district court did

not abuse its discretion by denying plaintiff's motion to compel production of

defendant's personnel file; the court properly relied on defense counsel's

affirmation that the file contained no relevant disciplinary records; even if evidence

of a prior substantiated excessive force investigation existed, on the facts of the

particular case before us such evidence would be inadmissible to show that

defendant acted violently in this instance)); *see also Johnson v. Miller*, No. 9:20-

CV-622 (LEK/ATB), 2021 WL 4803647, at *2 (N.D.N.Y. Sept. 2, 2021)

    In this case, the privilege log provided by Defendants shows that there are

disciplinary records for three of the Defendants. Defendant Spinner's file includes

a 2016 incident of discipline concerning excessive force. (*See* Bates 516-524).

Plaintiff's excessive force claim survived initial review. (Dkt. 9 at 10-11).

Defendant Spinner is a defendant on this claim. While the documentary record is

not extensive, there is sufficient detail to warrant production of the same. The

incident is not so remote in time to render the record not discoverable and shall be

produced subject to redaction of any personal information.

Defendant DeRouchie's file includes incidents of discipline in 2016 and 2018 arising from time and attendance issues. (*See* Bates 525-532). Defendant Moore's file includes incidents of discipline in 2008, 2010, 2014, 2015 and 2019 arising from time and attendance issues. (*See* Bates 533-560).

Discipline for time and attendance implicate credibility issues and are therefore subject to discovery. *See Gross v. Lunduski,* 304 F.R.D. 136, 140 (W.D.N.Y. 2014) (requiring DOCCS to disclose in discovery, among other things, Defendant's compliance with DOCCS time and attendance regulations because it was relevant to Defendant's credibility and job performance). The Court concludes that they are not so remote in time as to render them not discoverable. The Court therefore grants Plaintiff's motion to compel the production of these records, subject to redaction of any personal information.

The records shall be produced 15 days after the date of this order, unless an appeal is taken, in which case, this Order shall be stayed pending entry of an order resolving the appeal.

**WHEREFORE**, based on the findings above, it is

**ORDERED,** that Plaintiff's motion to compel (Dkt. 54) is granted; and it is further

**ORDERED**, that the disciplinary records of Defendants Spinner, DeRouchie, and Moore shall be produced 15 days after the date of this order, unless an appeal is taken, in which case, this Order shall be stayed pending entry of an order resolving the appeal

**ORDERED**, that the Clerk of the Court serve a copy of this Order on Plaintiff by regular mail.[1]

Dated:  April 1, 2025

Digitally signed
by Mitchell J Katz
Date: 2025.04.01
14:38:46 -04'00'

Hon. Mitchell J. Katz
U.S. Magistrate Judge

---

[1] The Clerk shall also provide plaintiff with copies of all unreported decisions cited herein in accordance with *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (*per curiam*).

2012 WL 1044505
Only the Westlaw citation is currently available.
United States District Court,
W.D. New York.

Thomas B. SIMCOE, Plaintiff(s),

v.

Lieutenant Timothy GRAY, NTPD,
Officer Jeffrey Smith, NTPD and Officer
Keith Glass, NTPD, Defendant(s).

No. 10–CV–6531.
|
March 28, 2012.

**Attorneys and Law Firms**

Thomas B. Simcoe, Attica, NY, pro se.

Charles E. Graney, Susan B. Parzymieso, Webster Szanyi, LLP, Buffalo, NY, for Defendant(s).


**DECISION AND ORDER**

JONATHAN W. FELDMAN, United States Magistrate Judge.


*Preliminary Statement*

**\*1** *Pro se* plaintiff brings this 42 U.S.C. § 1983 action against defendants on grounds, inter alia, that defendants used excessive force against him in violation of his constitutional rights. *See* Complaint (Docket # 1). Currently pending before the Court are plaintiff's motions to amend Complaint (Docket # 26), to compel (Docket # 41) for contempt (Docket # 46) and to appoint counsel (Docket # 50), and defendants' motion to compel (Docket # 57).


*Discussion*

**I. Plaintiff's Motion to Amend Complaint**
Plaintiff filed his original Complaint on September 17, 2010, asserting that on September 29, 2007, defendants Gray, Smith and Glass, all of whom are police officers with the North Tonawanda Police Department, violated his Fourth and Fourteenth Amendment rights by using excessive force against him in connection with his arrest on that date. *See*

Complaint (Docket # 1). The defendants were served by the United States Marshal and answered plaintiff's Complaint on December 29, 2010. *See* Answer (Docket # 9).

On May 2, 2011, plaintiff filed the instant motion to amend. In his motion plaintiff seeks to add two new defendants: The City of North Tonawanda ("City") and Randy Szukala, the City's Chief of Police. As to Chief Szukala, Simcoe seeks to add a cause of action alleging Szukala failed to train, supervise and discipline his subordinates, failed to address or correct unconstitutional practices he was aware of, and for failure to investigate plaintiff's complaint against the defendant officers. (Docket # 26). Plaintiff further alleges that Szukala "had actual knowledge of prior excessive force abuses by the subordinates, failed to address or correct these unconstitutional practices and in fact acquiesced to the use of police brutality." *Id.* As to the City, Simcoe seeks to add a cause of action alleging that the City has "a custom and or policy" of deliberate indifference to constitutional violations, and there exists "a causal connection between the [City's] deliberate indifference and excessive force by the police." *Id.* Although plaintiff failed to attach a copy of a proposed Amended Complaint to his May 2nd motion papers, plaintiff filed his proposed Amended Complaint with his Reply in further support of his motion to amend on July 5, 2011. *See* Proposed Amended Complaint attached to Docket # 34.

"A district court has broad discretion in determining whether to grant leave to amend." *Gurary v. Winehouse,* 235 F.3d 792, 801 (2d Cir.2000). Pursuant to Rule 15(a)(2), leave to amend a pleading should be freely granted, absent a showing of "excessive delay, prejudice to the opposing party, or futility." *Friedl v. City of N.Y.,* 210 F.3d 79, 87 (2d Cir.2000); *Lucente v. Int'l Machs. Bus. Corp.,* 310 F.3d 243, 258 (2d Cir.2002). A proposed amendment would be futile if it could not withstand a Rule 12(b)(6) motion to dismiss and/or where the claim is barred by the applicable statute of limitations period. *See Grace v. Rosenstock,* 228 F.3d 40, 53 (2d Cir.2000); *McKinney v. Eastman Kodak Co.,* 975 F.Supp. 462, 465 (W.D.N.Y.1997). Here, the proposed amendments will be deemed futile if they are time barred.

**\*2** *"Relation Back" and the Statute of Limitations:* Under the Federal Rules of Civil Procedure ("FRCP"), an amended Complaint adding a new party will "relate back" to the filing of the original Complaint for statute of limitations purposes only if certain conditions are met. FRCP Rule 15(c) is entitled "Relation Back of Amendments" and provides that

an "amendment to a pleading relates back to the date of the original pleading when":

(A) the law that provides the applicable statute of limitations allows relation back;

(B) the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out-or attempted to be set out-in the original pleading; or

(C) the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1) (B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment:

(i) received such notice of the action that it will not be prejudiced in defending on the merits; and

(ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

Fed.R.Civ.P. 15(c)(1).

The statute of limitations for a Section 1983 action arising from events in New York is New York's three-year limitations period applicable to personal injury actions. *Ormiston v. Nelson,* 117 F.3d 69, 71 (2d Cir.1997). Accordingly, here plaintiff's Section 1983 claims accrued on September 29, 2010—three years after the incident on September 29, 2007. Thus, unless the claims against proposed defendants City of North Tonawanda and Chief Randy Szukala "relate back" to the filing of his original Complaint, plaintiff's claims against the proposed defendants are time barred because they are outside the three year statute of limitations.

Viewing *pro se* plaintiff's proposed pleading liberally, I find that his allegations against the proposed defendants arise out of the same conduct, transaction and occurrence set forth in the original Complaint. As a result, plaintiff has satisfied this prerequisite for application of the relation back doctrine. I find, however, that Simcoe has not established the "mistake" requirement under Rule 15(c) and accordingly his claims against the City and Chief Szukala are untimely. For this reason, his proposed amendments would be futile. [1]

York Court of Appeals has noted that New York's relation back rule is largely patterned after the federal rule [Rule 15(c) ]" and "district courts in this circuit have found that New York's relation back law employs a similar standard as the federal rule") (citations omitted).

*Mistake Under Rule 15(c):* A mistake in identity can be a factual mistake (*i.e.,* that Simcoe misapprehended the identity of the party he wished to sue) or a legal mistake (*i.e.,* that Simcoe misunderstood the legal requirements of his cause of action). *Soto v. Brooklyn Corr. Facility,* 80 F.3d 34, 36 (2d Cir.1996). Once a mistake is shown, whether amendment adding the party relates back depends on what the new defendant knew or should have known, not on the plaintiff's knowledge or timeliness in seeking to amend the pleading. *Krupski v. Costa Crociere S. p. A.,* ––– U.S. ––––, 130 S.Ct. 2485, 2496, 177 L.Ed.2d 48 (2010). Here Simcoe has not demonstrated a cognizable mistake. He claims that his mistake was a "legal mistake" and alleges that he was "misinformed at the county jail that [he] had one year to file a civil suit." *See* Plaintiff's Reply (Docket # 34) at p. 4. He "believed all was lost" and "[i]t was only while researching my criminal appeal that I 'stumbled' on the three year statute of limitations for this action." *Id.* Simcoe's explanation may set forth a mistake as to why he did not sue defendants for a civil tort under New York law, but does not constitute a mistake for purposes of the relation back doctrine. The fact is that plaintiff filed a timely federal civil rights action against the officers who allegedly assaulted him, could have named Chief Szukala and the City as defendants in his lawsuit, and did not do so. Simcoe's argument that he needed "more information" through discovery before being able to allege plausible claims against Chief Szukala and the City is also untenable and contradicted by the proposed amended complaint itself. Indeed, Simcoe's proposed amended complaint includes no real "facts" on either of his proposed new claims. Instead, his proposed claims consist of conclusory, broad and unsupported general allegations that the City was "on constructive notice" of "prior instances of unusual brutality by its police officers" and that Chief Szukala is liable because he "failed to train, supervise, discipline and investigate [North Tonawanda] police officers." *See* Proposed Amended Complaint attached to Docket # 34 at pp. 2–3. For these reasons, plaintiff's motion to amend his complaint (Docket # 26) is **denied.** [2]

[1]    *See Sepulveda v. City of N.Y.,* No. 01 CV 3117(GBD), 2003 WL 22052870, at *3 n. 4 (S.D.N.Y. Sept.2, 2003) (noting that "the New

[2]    Even if allowed to relate back, the proposed amended complaint would be subject to dismissal

for failure to state a claim. *See Alfaro Motors, Inc. v. Ward,* 814 F.2d 883, 887 (2d Cir.1987) ("[T]o state a civil rights claim under § 1983, a complaint must contain specific allegations of fact which indicate a deprivation of constitutional rights; allegations which are nothing more than broad, simple, and conclusory statements are insufficient to state a claim under § 1983."); *Mimms v. Carr,* No. 09–CV–5740 (NGG) (LB), 2011 WL 2360059, at *14 (E.D.N.Y. June 9, 2011) (a general claim that various defendants failed to supervise or train "is wholly conclusory, and thus insufficient to support a finding of liability.").

## II. Plaintiff's Motion to Compel

**\*3** With the instant motion to compel, plaintiff seeks an Order compelling defendants to produce documents in response to his Request for Production and Inspection of Documents and Things dated June 13, 2011 (Docket # 33). (Docket # 41). Plaintiff asserts that these documents are "relevant" to his case and are "needed to establish his claims of liability and these relevant materials cannot be accessed by any other means." (Docket # 41). On July 14, 2011, defendants filed their response to plaintiff's Request for Production of Documents, therein asserting objections to eighteen of nineteen of plaintiff's requests. (Docket # 36). The bases for defendants' objections include that plaintiff's requests are (1) not relevant or likely to lead to the discovery of admissible evidence, (2) duplicative of prior discovery requests that have already been objected to and are before the Court for *in camera* review,[3] (3) overly broad, vague, unduly burdensome, (4) not in the possession, custody or control of the defendants, and (5) protected by common law and statutory privileges. (Docket # 36).

[3] On April 7, 2011, the Court held a telephone scheduling conference to address, *inter alia,* the parties' discovery dispute regarding the discoverability of the contents of defendants' personnel files. The Court ordered defense counsel to make an *in camera* submission on materials from defendants' personnel files by April 22, 2011. (Docket # 23). On April 21, 2011, defense counsel submitted for *in camera* review a copy of the defendants' personnel and disciplinary files, as well as one complaint made against defendant Gray concerning the prior use of excessive force. These documents are before the Court and this Decision will address whether these documents must be produced.

The documents in dispute generally relate to plaintiff's demand to review the personnel files of the named defendants. Prior complaints made against the defendants, whether substantiated or not, are discoverable in § 1983 civil rights actions so long as the complaints are similar to the constitutional violations alleged in the complaint or are relevant to the defendant's truth or veracity. *Chatman v. Felker,* No. CIV S–03–2415 JAM KJM P, 2009 WL 173515, at *5–6 (E.D.Cal. Jan.23, 2009); *Session v. Rodriguez,* No. 3:03CV0943 (AWT), 2008 WL 2338123, at *2 (D.Conn. June 4, 2008); *Cox v. McClellan,* 174 F.R.D. 32, 34 (W.D.N.Y.1997).

The Court has reviewed the papers in support of (Docket # 41) and in opposition to (Docket # 49) plaintiff's motion to compel (Docket # 41), as well as the documents submitted to the Court by defense counsel on April 21, 2011 for *in camera* review. Based on this review, the Court directs defense counsel to provide the plaintiff with a copy of the portions of the letters of commendation issued to Officer Glass and Officer Smith, and the October 2, 2007 Letter of Commendation authored by Chief Szukala that sets forth *factual* information regarding the incident resulting in the plaintiff's arrest on September 29, 2007. These documents are directly relevant to plaintiff's claims in the instant lawsuit. Defense counsel may redact language reflecting the opinions of the author which caused the commendation letters to be issued. The Court also directs that should this matter survive summary judgment, defense counsel must submit to the trial judge for review at an appropriate time in advance of trial any and all documents relating to previous excessive force complaints against any defendant. Such information may, in the judgment of the trial judge, constitute discoverable and/or admissible impeachment evidence. It will be up to the trial judge to determine when and how such impeachment information may be used by plaintiff. In all other respects, plaintiff's motion to compel (Docket # 41) is **denied.**

## III. Plaintiff's Motion for Contempt

**\*4** With the instant motion, plaintiff seeks an Order against Federal Bureau of Investigations ("FBI") Special Agent Laurie Bennett for contempt. (Docket # 46). Plaintiff maintains that in July 2011 Agent Bennett was served with a subpoena which required the production of documents, but Agent Bennett has failed to respond to the subpoena or produce the documents. (Docket # 46). The subpoena

seeks the production of "paper documentation" regarding "[a]ny investigation and interview notes, e-mails, letters pertaining to Thomas Simcoe's formal complaint to your office against North Tonawanda PD officers Lt. Gray, Ofcs. Jeffrey Smith & Keith Glass (2001–2008 time frame)" and "[a]ny other documentation relating to complaints against these officers." *See* Exhibit "1A" attached to Declaration of David T. Szumski, SSA annexed to Docket # 52.

Assistant United States Attorney Mary E. Fleming, Esq. submitted a Memorandum of Law in Opposition to plaintiff's motion. *See* Docket # 52. In the Memorandum, the United States argues that (i) the subpoena has not been properly issued, and (ii) the Court lacks jurisdiction to enforce plaintiff's subpoena because plaintiff failed to comply with the Department of Justice's *Touhy* [4] regulations. *See id.* First, the United States points out that the subpoena that plaintiff served on the FBI "was not issued by a court, the clerk of the Court, or by an attorney." *See id.* at p. 2. The United States asserts that the subpoena was signed by plaintiff Simcoe, a *pro se* litigant who "does not have the authority to issue a subpoena" and, as a result, "the subpoena is unenforceable." *Id.* at pp. 2–3. Second, the United States argues that the regulatory provisions of 28 C.F.R. § 16.01 *et seq.* prohibit the FBI from responding to the subpoena issued by plaintiff. *Id.* at p. 3. The United States maintains that said regulations prohibit the FBI from producing documents in proceedings in which the United States and/or the FBI is not a party to the action. *Id.* The Government asserts that in order to obtain the documents he seeks from the Department of Justice (which the FBI is a part of), plaintiff "must comply with the so-called 'Touhy' regulations, found at 28 C.F.R. §§ 16.21 *et seq.*" *Id.* at p. 5. The United States contends that once he has followed the requisite procedures under the *Touhy* regulations, and received "federal agency action in response to his request, he may seek review of the Department's decision, should it fail to comply with his demand, in the district court." *Id.* Until then, since "Simcoe has not received such final agency action ... this Court lacks jurisdiction to address the merits of Simcoe's application under this procedure." *Id.*

[4]    *United States ex rel, Touhy v. Regan,* 340 U.S. 462, 71 S.Ct. 416, 95 L.Ed. 417 (1951).

Because the Court agrees with the Government that the *pro se* plaintiff has no authority to independently issue the subpoena, the Court will not enforce the subpoena at issue. *See* Fed.R.Civ.P. 45(a)(2) and (3). Accordingly, plaintiff's motion for contempt (Docket # 46) is **denied.**

### IV. Plaintiff's Motion to Appoint Counsel

**\*5**  With the instant motion to appoint counsel, plaintiff requests that the Court appoint him counsel to represent him at his deposition, which has yet to take place. [5] (Docket # 50). Plaintiff asserts that the appointment of counsel is necessary because he does not believe he is "sufficiently well versed in the law and thus not capable of dealing with my professional adversaries singlehandedly" during his deposition. *Id.* For the reasons that follow, plaintiff's motion for appointment of counsel (Docket # 50) is **denied without prejudice to renew.**

[5]    Plaintiff's deposition was scheduled for August 23, 2011, but was adjourned pending a determination on plaintiff's instant motion for counsel.

Under 28 U.S.C. § 1915(e), the Court may appoint counsel to assist indigent litigants. *Sears, Roebuck & Co. v. Charles W. Sears Real Estate, Inc.,* 865 F.2d 22, 23 (2d Cir.1988). An assignment of counsel is a matter within the judge's discretion. *In re Martin–Trigona,* 737 F.2d 1254, 1260 (2d Cir.1984). "There is no requirement that an indigent litigant be appointed *pro bono* counsel in civil matters, unlike most criminal cases." *Burgos v. Hopkins,* 14 F.3d 787, 789 (2d Cir.1994). The factors to be considered in deciding whether or not to assign counsel were set forth by the Second Circuit in *Hodge v. Police Officers,* 802 F.2d 58, 61–62 (2d Cir.1986):

> [T]he district judge should first determine whether the indigent's position seems likely to be of substance. If the claim meets this threshold requirement, the court should then consider the indigent's ability to investigate the crucial facts, whether conflicting evidence implicating the need for cross-examination will be the major proof presented to the fact finder, the indigent's ability to present the case, the complexity of the legal issues and any special reason in that case why appointment of counsel would be more likely to lead to a just determination.

Applying the factors set forth in *Hodge,* I find that plaintiff's allegations satisfy the initial threshold showing of merit. *See, e.g., Mackey v. DiCaprio,* 312 F.Supp.2d 580, 582 (S.D.N.Y.2004) (finding plaintiff's allegation that he was "savagely" beaten while being taken into custody—resulting in headaches, permanent scars, and tendon damage—satisfy a "threshold showing of merit"); *Allen v. Sakellardis,* No. 02 Civ.4373(JSR) (DF), 2003 WL 22232902, at *1–2 (S.D.N.Y. Sept. 29, 2003) (finding that plaintiff's allegations that corrections officers assaulted him while he was restrained might have merit). However, having reviewed the Complaint and considered the nature of the factual and legal issues involved, as well as the plaintiff's ability to present his claims, I conclude that appointment of counsel is not warranted at this particular time.

"Volunteer lawyer time is a precious commodity" that "should not be allocated arbitrarily." *Cooper v. A. Sargenti Co.,* 877 F.2d 170, 172 (2d Cir.1989). Plaintiff's Complaint is detailed in nature and adequately describes the events that led to his alleged injuries. The details contained in the Complaint suggest that investigating the claims made in the instant action will not be a complicated exercise for plaintiff, as the factual circumstances and legal issues largely focus on a single incident—that is, the alleged excessive force defendants used on plaintiff during his arrest on September 29, 2007. *See, Allen,* 2003 WL 22232902, at *2 (denying plaintiff's motion to appoint counsel after noting that plaintiff's claim "largely focuses on a single incident," and, therefore, plaintiff "should be able to obtain the documentary evidence relating to that incident, regardless of whether he is represented by counsel"). The factual circumstances surrounding plaintiff's claims do not appear to be unusually complicated and, at least at this point in time, plaintiff has shown that he is capable of prosecuting his case. Plaintiff has drafted legible, organized, cogent and appropriate pleadings, discovery demands and motions backed by legal research. *See Castro v. Manhattan E. Suite Hotel,* 279 F.Supp.2d 356, 358 (S.D.N.Y.2003) (denying appointment of counsel after noting that "there is no indication that [plaintiff] lacks the ability to present his case"); *Harris v. McGinnis,* No. 02 Civ 6481(LTSDF), 2003 WL 21108370, at *2 (S.D.N.Y. May 14, 2003) (denying application after finding that plaintiff seemed capable of understanding and presenting the legal issues raised by his claims, as his papers were clear, addressed relevant issues and cited pertinent case law); *Avent v. Solfaro,* 210 F.R.D. 91, 93–94 (S.D.N.Y.2002) (where plaintiff demonstrated his ability to present facts, draft pleadings and motions "backed by legal research," court declined to appoint counsel).

**\*6** Given the limited resources available with respect to *pro bono* counsel, I find no "special reason" why appointment of counsel at this stage would be more likely to lead to a just determination. *See Boomer v. Deperio,* No. 03–CV–6348L, 2005 WL 15451, at *1–2 (W.D.N.Y. Jan.3, 2005) (court denied motion to appoint counsel despite plaintiff's claim "that appointed counsel is necessary to represent him during his deposition by defendants"); *Harris v. McGinnis,* No. 02 Civ. 6481 (LTSDF), 2003 WL 21108370, at *2 (S.D.N.Y. May 14, 2003) (application denied where plaintiff "offered no special reason why appointment of counsel would increase the likelihood of a just determination"). Plaintiff may consult with the Western District *pro se* office attorneys for questions on process and procedure.

*V. Defendants' Motion to Compel*

With the instant motion, defendants seek an Order compelling plaintiff to provide defendants with an authorization to obtain his mental health records. (Docket # 57). Defendants assert that plaintiff should be ordered to provide them with an authorization to obtain his mental health records "because he has waived his ability to assert the psychotherapist-patient privilege by placing his mental health directly at issue in this matter." *See* Declaration of Susan B. Parzymieso, Esq. annexed to Docket # 57 at ¶ 4. Defendants contend that the state of plaintiff's mental health at the time of the alleged incident is relevant "because it contributed to his being responsible for causing his own injuries" and at the time of the incident the defendants "were aware of his mental health history and acted with that information in mind." *Id.* at ¶ 43. Plaintiff opposes defendants' motion on grounds that the psychotherapist-patient privilege applies here, he has not waived the psychotherapist-patient privilege, and because his confidential mental health records have no relevance to the Section 1983 claims he has asserted. (Docket # 61). Plaintiff points out that he has "neither alleged any emotional injury nor sought damages for mental distress of any kind." *Id.*

In *In re Sims,* 534 F.3d 117 (2d Cir.2008), the Second Circuit instructed that

> a plaintiff does not forfeit
> his psychotherapist-patient privilege
> merely by asserting a claim for
> injuries that do not include emotional
> damage; that a plaintiff does not forfeit

that privilege by merely stating that he suffers from a condition such as depression or anxiety for which he does not seek damages; that a plaintiff may withdraw or formally abandon all claims for emotional distress in order to avoid forfeiting his psychotherapist-patient privilege; and that a party's psychotherapist-patient privilege is not overcome when his mental state is put in issue only by a another party.

*Id.* at 134.

Here, I find that plaintiff has not placed his mental health at issue by merely asserting a claim for injuries and, as a result, he has not waived the psychotherapist-patient privilege. In his Complaint, plaintiff asserts claims for excessive force against the defendants. Plaintiff does not assert claims for mental or emotional distress and there is nothing in his Complaint which affirmatively places his mental health at issue. Although defense counsel argues that defendants were "aware of [Simcoe's] mental health issues at the time he was arrested," there is no evidence that defendants reviewed or had access to any of plaintiff's mental health records prior to his arrest. Though plaintiff may have defended himself in his criminal lawsuit on grounds that he has mental health issues, defendants have not established how his subsequent defense in the criminal prosecution is relevant or admissible here in

plaintiff's civil action claiming excessive force during the arrest. Accordingly, the Court hereby Orders that defendants' motion to compel plaintiff's mental health records (Docket # 57) is **denied.** [6] *See In re Sims,* 534 F.3d at 142 (holding that the district court erred in finding that the *pro se* plaintiff waived the psychotherapist-patient privilege).

[6]    Nothing in this Decision and Order should be construed as denying the defendants the opportunity to present evidence at trial on what information they were aware of regarding Simcoe's mental health history at the time they encountered him on September 29, 2007 or correspondence or statements Simcoe may have made to the defendants at any time subsequent to his arrest.

### Conclusion

**\*7** Plaintiff's motion to amend (Docket # 26) is **denied.** Plaintiff's motion to compel (Docket # 41) is **granted in part and denied in part.** Plaintiff's motion for contempt (Docket # 46) is **denied.** Plaintiff's motion to appoint counsel (Docket # 50) is **denied without prejudice to renew.** Defendants' motion to compel (Docket # 57) is **denied.**

### SO ORDERED.

### All Citations

Not Reported in F.Supp.2d, 2012 WL 1044505

---

**End of Document**                    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

**Filings (4)**

| Title | PDF | Court | Date | Type |
|---|---|---|---|---|
| **1.** **(Report or Affidavit of Lamar K. Cousins)** <br> SIMCOE, v. GRAY et al. <br> 2015 WL 11529877 | [PDF] | W.D.N.Y. | Mar. 18, 2015 | Expert Materials |
| **2.** **(Report or Affidavit of Mark J. Anders, M.S.)** <br> SIMCOE, v. GRAY et al. <br> 2015 WL 11529876 | [PDF] | W.D.N.Y. | Feb. 02, 2015 | Expert Materials |
| **3.** **Docket 6:10-CV-06531** <br> Simcoe v. Gray et al | — | W.D.N.Y. | Sep. 17, 2010 | Docket |
| **4.** **Expert Resume of Lamar K. Cousins** <br> Lamar K. Cousins <br> 2015 WL 13700865 | [PDF] | W.D.N.Y. | Mar. 05, 2015 | Expert Resume |

**History (6)**

**Direct History (1)**

1. Simcoe v. Gray ✎
   2012 WL 1044505 , W.D.N.Y. , Mar. 28, 2012

**Related References (5)**

⚑ 2. Simcoe v. Gray
2013 WL 2898073 , W.D.N.Y. , June 13, 2013

*Motion to Vacate Denied by*

⚑ 3. Simcoe v. Gray
2013 WL 12203178 , W.D.N.Y. , Aug. 12, 2013

*AND Judgment Vacated by*

4. Simcoe v. Gray
577 Fed.Appx. 38 , 2nd Cir.(N.Y.) , Aug. 27, 2014

5. Simcoe v. Gray
2015 WL 4138876 , W.D.N.Y. , July 08, 2015

6. Simcoe v. Gray
670 Fed.Appx. 725 , 2nd Cir.(N.Y.) , Nov. 23, 2016

KeyCite Yellow Flag - Negative Treatment

Disagreed With by    Holmes v. Fischer,    W.D.N.Y.,    March 28, 2013

2008 WL 2704895
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Jorge LINARES, Plaintiff,
v.
David MAHUNIK; John Burge, Defendants.

No. 9:05-CV-0625 (GLS)(RFT).
|
July 7, 2008.

**Attorneys and Law Firms**

Jorge Linares, Auburn, NY, pro se.

Hon. Andrew M. Cuomo, Attorney General of the State of
New York, Heather R. Rubinstein, Esq., Assistant Attorney
General, of Counsel, Syracuse, NY, for Defendants.

*MEMORANDUM DECISION and ORDER*

RANDOLPH F. TREECE, United States Magistrate Judge.

**I. BACKGROUND**

**\*1** Plaintiff Jorge Linares commenced this action by filing a
Complaint pursuant to 42 U.S.C. § 1983 alleging deprivation
of his civil rights. Dkt. No. 1. Plaintiff thereafter filed an
Amended Complaint. Dkt. No. 9. Defendants filed a Motion
to Dismiss Plaintiff's Amended Complaint. Dkt. No. 22.
By Report and Recommendation, this Court recommended
that Defendants' Motion to Dismiss be granted in part and
denied in part. Dkt. No. 28. The Honorable Gary L. Sharpe,
United States District Court Judge, adopted the Report and
Recommendation in its entirety by Memorandum-Decision
and Order filed on April 30, 2007. Dkt. No. 35. The following
claims against Defendants Mahunik and Burge survived the
Motion to Dismiss: (1) Plaintiff's First Amendment claims
against Defendant Mahunik based on retaliation, and (2)
Plaintiff's supervisory liability claim against Defendant Burge
relating to the retaliation claims.[1] Dkt. No. 35 at p. 6.

[1]    Plaintiff's claims against Defendants in their
official capacities and the remaining claims
against Mahunik and Burge were dismissed,
as was Plaintiff's only claim against Defendant
McLaughlin. Dkt. No. 35 at p. 6.

Currently before the Court is Plaintiff's Motion to Compel
Discovery. Dkt. No. 52. Defendants filed a Response in
Opposition to the Motion. Dkt. No. 55. Plaintiff has submitted
a Reply to Defendants' Opposition. Dkt. No. 56. Plaintiff's
Motion relates to his First Request for Interrogatories and
Request for Production, both dated August 4, 2007. Dkt. No.
52, Exs. A & B. Defendants responded to the requests on
December 3, 2007. *See id.,* Exs. C & D. Thereafter Plaintiff
filed the present Motion to Compel, seeking (1) responses to
Interrogatories # 5, # 6, # 8, & # 9; (2) a copy of Defendant
Mahunik's personnel file, including his disciplinary file; and
(3) a copy of the Department of Corrections Employee's
Manual. Dkt. No. 52, Jorge L. Linares Affirm., dated Mar.
26, 2008, at p. 1. Because the Defendants have responded to
Plaintiff's discovery demands, the Court will only address the
adequacy of the responses they provided.

**II. DISCUSSION**

**A. Interrogatories**

1. Interrogatory # 5

Interrogatory # 5 asked: "Did the defendant Mahunik at any
time prior to and including the date of April 17, 2005, receive
confidential information in regard[s] to plaintiff? If yes, state
the date, the substance of the information received and the
name and location of the individual on those dates." Dkt. No.
52, Ex. A, at ¶ 5. Defendant responded in part, indicating that
he had received information "that plaintiff's cell had a shank in
it." Dkt. No. 52, Ex C, at ¶ 5. Defendants objected to providing
Plaintiff with the identity of the confidential informant "on
the grounds that it is privileged and confidential under,
*inter alia,* informant's privilege," it would "constitute an
unwarranted invasion of privacy and could risk the safety of
the informant," and disclosure could jeopardize safety and
security of the facility. *Id.*

The safety and security of the facility and the confidential
informant outweighs Plaintiff's need for the requested
information at this time. *See Bass v. Grottoli,* 1996 WL

455016, at *4 (S.D.N.Y. Aug.12, 1996) (noting the court's dual interests of protecting prisoners from other inmates as well as shielding from inmates information which may implicate prison security). This portion of Plaintiff's Motion is **denied.**

### 2. Interrogatory # 6

**\*2** Interrogatory # 6 asked: "Did the defendant Mahunik at any time while the plaintiff was housed at Auburn plaintiff access [sic] to the law library and/or the chapel areas? If yes, state the dates and times for each incident." Dkt. No. 52, Ex. C at ¶ 6. Defendants object to the request as "unintelligible, vague and ambiguous." *Id.* It is clear that Plaintiff omitted the word "deny" from his request and that he intended to ask Defendant Mahunik if he ever denied Plaintiff access to the law library or chapel areas. While Plaintiff's First Amendment free exercise and access to the law library claims were dismissed, this information may be relevant to Plaintiff's claims that Defendant Mahunik took retaliatory action against Plaintiff. Defendants are therefore directed to, **within thirty (30) days** of the filing date of this Order, respond to Interrogatory # 6 as clarified by the Court.

### 3. Interrogatory # 8

Interrogatory # 8 reads as follows:

> Since the defendant Burge was the superintendent at Auburn, was he aware if at any time before or after the date of April 17, 2005, was the defendant Mahunik, reprimanded, counseled or otherwise told to cease and desist from harassing plaintiff? If yes, state the dates of such incidents and state the name of the supervisor that spoke to him."

Dkt. No. 52, Ex. C, at ¶ 8.

Defendants object claiming the request is not relevant, not likely to lead to the discovery of admissible evidence, and seeking information protected by New York Civil Rights

Law § 50-a. *Id.* Defendants also contend that release of the information "would violate the personal privacy of the defendant and could jeopardize the safety and security of the facility and the defendant." *Id.*

The information requested is certainly relevant to Plaintiff's supervisory liability claim against Burge relating to Defendant Mahunik's alleged retaliation against Plaintiff. With respect to Defendants objections of privilege and prison security, defendants have made no showing that there are "specific harms likely to accrue from disclosure of specific materials." *King v. Conde,* 121 F.R.D. 180, 189 (E.D.N.Y.1998). Absent such a showing, and since "state laws of privilege do not govern discovery in federal cases," *see Melendez v. Greiner,* 2003 WL 22434101, at *5 (S.D.N.Y. Oct.23, 2003), the Defendants' assertions are without weight.

Defendants' objections are overruled. Accordingly, the Court directs Defendant Burge to, **within thirty (30) days** of the filing date of this Order, respond to Interrogatory # 8.

### 4. Interrogatory # 9

Interrogatory # 9 seeks information concerning grievances and complaints received by Defendant Burge and written against Defendant Mahunik "for misconduct within the two years prior to April 17, 2005, and until plaintiff was transferred from Auburn." Plaintiff also asks for the date of each complaint, the type of complaint, who investigated it, and the results of the investigation. Dkt. No. 52, Ex. C, at ¶ 9. Defendants object claiming the request is not relevant, not likely to lead to the discovery of admissible evidence, overly broad, and seeking information protected by New York Civil Rights Law § 50-a. *Id.* Defendants also contend that release of the information "could jeopardize the safety and security of the facility and the defendant" and that the request "is unduly burdensome as such records are not kept in a readily retrievable manner." *Id.*

**\*3** Past complaints against Defendant Mahunik regarding retaliation could be used by Plaintiff to attack Defendant Mahunik's credibility or to impeach his testimony or to demonstrate that a supervisory defendant had notice of his alleged past actions. As stated in *Melendez v. Greiner,* 2003 WL 22434101, at *3:

> [T]o the extent other inmates' grievances or complaints allege conduct similar to that alleged in the Complaint, and were similarly directed against any of the named

defendants, the documents sought may well yield information relevant to the Melendez's claims, and such documents are therefore discoverable. *See, e.g, Cox v. McClelan,* 174 F.R.D. 32, 34 (W.D.N.Y.1997) (permitting discovery of prior similar complaints against defendants); *Malsh v. New York City Police Dep't,* No. 92 Civ. 2973, 1995 U.S. Dist. LEXIS 4663, at *1-2, 1995 WL 217507 (S.D.N.Y.Ap[r].11, 1995) (discovery of prior complaints and disciplinary actions against defendants was relevant to show "pattern, intent, absence of mistake, etc.") (quoting *Ismail v. Cohen;* 899 F.2d 183, 188 (2d Cir.1990)); *Hurley v. Keenan,* No. 79 Civ. 4772, 1984 U.S. Dist. LEXIS 16888, 1984 WL 358 (S.D.N.Y. May 8, 1984) (permitting discovery of prior similar administrative, civil, and criminal actions as relevant and potentially admissible to demonstrate defendants' intent and credibility and supervisory knowledge of misconduct).

With respect to Defendants' objections of privilege and prison security, Defendants have made no showing that there are "specific harms likely to accrue from disclosure of specific materials." *King v. Conde,* 121 F.R.D. at 189. Absent such a showing, and since "state laws of privilege do not govern discovery in federal cases," *see Melendez v. Greiner,* 2003 WL 22434101, at *5, Defendants' assertions are without weight.

Moreover, a party objecting to the disclosure of certain evidence bears the burden of establishing "precisely why its objections are proper given the broad and liberal construction of the discovery rules found in the Federal Rules of Civil Procedure." *Obiajulu v. City of Rochester, Dep't of Law,* 166 F.R.D. 293, 295 (W.D.N.Y.1996). "General and conclusory objections as to relevance, overbreadth, or burden are insufficient to exclude discovery of requested information." *Melendez v. Greiner,* 2003 WL 22434101, at *1. A "[c]onclusory assertion of burdensomeness is entitled to no weight whatsoever." *Jackson v. Edwards,* 2000 WL 782947, at *8 (S.D.N.Y. June 16, 2000).

Defendants merely assert, in conclusory fashion, that complying with the demands would be unduly burdensome, given the manner in which grievances and complaints are filed. Defendants have offered no tangible evidence or testimony which would explain the process required to obtain such records, the amount of time and cost that would be expended in compiling such records, or any other information to establish that their production would indeed be overly onerous when weighed against Plaintiff's need for the information. Plaintiff, on the other hand, had asserted

a legitimate need for the documents requested. Moreover, we find that this Interrogatory, to the extent it pertains to complaints of retaliation, is narrowly tailored and thus not burdensome.

**\*4** All of Defendants' objections are overruled. Accordingly, the Court directs Defendant Burge to, **within thirty (30) days** of the filing date of this Order, respond to Interrogatory # 9, as clarified by the Court.

### B. Requests for production

#### 1. Request # 1

Plaintiff seeks "[a]ny and all complaint[s] and/or grievances filed by inmates against Mahunik by inmates or staff, within the last two years." Dkt. No. 52, Ex. D, at ¶ 1. Defendants object to the request as vague, ambiguous, and overly broad; not relevant to plaintiff's claims or likely to lead to the discovery of admissible evidence; and too burdensome to produce. *Id.* For reasons discussed previously in this order, Defendants' conclusory objections are overruled and Defendants are directed to respond to the request for production, as limited by the Court. Defendants shall **within thirty (30) days** of the filing date of this Order produce copies of any complaints or grievances filed by inmates against Mahunik within the last two years alleging that Defendant Mahunik **retaliated against an inmate.**

#### 2. Request # 3

Plaintiff asks for a copy of the New York State Department of Correctional Services Employee's Handbook and Manual. Dkt. No. 52, Ex. D, at ¶ 3. Defendants object to the request as "unduly vague, unduly burdensome and overly broad" and not relevant. *Id.* In response to the Motion, Defendants also argue that since "it appears from plaintiff's motion that he has relevant portions of the Handbook already in his possession," Defendants need not produce it. Dkt. No. 55 at 3. Plaintiff says he only has "some minor portions" of the Handbook. Dkt. No. 56 at 2. Considering the cost of copying the entire Employee Handbook, Plaintiff is directed to identify for Defendants which additional sections of the Employee Handbook he believes to be relevant to his claims, and Defendants are directed to respond to any such specific request **within thirty (30) days** of receipt of the same.

2008 WL 2704895

### 3. Request # 11

Plaintiff seeks copies of any letters of reprimand contained in Defendant Mahunik's personnel file. Dkt. No. 52, Ex. D, at ¶ 11. The Court agrees with Defendants' objections that this request is overbroad and not likely to lead to the discovery or admissible evidence. This aspect of Plaintiff's Motion is **denied.**

**WHEREFORE,** it is hereby

**ORDERED,** that Plaintiff's Motion to Compel (Dkt. No. 52) is **GRANTED** in part and **DENIED** in part, as set forth and limited above. Defendants must serve supplemental responses and/or produce required documents **within THIRTY (30) DAYS** of the filing date of this Order, and it is further

**ORDERED,** that the Clerk serve a copy of this Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

**All Citations**

Not Reported in F.Supp.2d, 2008 WL 2704895

---

End of Document

© 2025 Thomson Reuters. No claim to original U.S. Government Works.

**Filings (1)**

| Title | PDF | Court | Date | Type |
|---|---|---|---|---|
| **1.  Docket 9:05-CV-00625**<br>Linares v. Mahunik et al | — | N.D.N.Y. | May 23, 2005 | Docket |

**History (8)**

**Direct History (2)**

⚑  1.  Linares v. Mahunik 🏳️
    2008 WL 2704895 , N.D.N.Y. , July 07, 2008

*Modification Denied by*

2.  Linares v. Mahunik
    2009 WL 10676997 , N.D.N.Y. , May 07, 2009

**Related References (6)**

3.  Linares v. Mahunik
    2006 WL 2595200 , N.D.N.Y. , Sep. 11, 2006

4.  Linares v. Mahunik
    2007 WL 9657976 , N.D.N.Y. , Apr. 30, 2007

5.  Linares v. Mahunik
    2008 WL 11344927 , N.D.N.Y. , Apr. 11, 2008

6.  Linares v. Mahunik
    2009 WL 3165660 , N.D.N.Y. , Sep. 29, 2009

7.  Linares v. Mahunik
    2010 WL 11530520 , N.D.N.Y. , Mar. 25, 2010

*Affirmed by*

8.  Linares v. McLaughlin
    423 Fed.Appx. 84 , 2nd Cir.(N.Y.) , June 01, 2011

2008 WL 2433701

2008 WL 2433701
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Rafael MESSA, Plaintiff,
v.
R.K. WOODS, Superintendent, Upstate
Correctional Facility, et al., Defendants.

Civil Action No. 9:07-CV-0306 (DNH/DEP).
|
June 12, 2008.

**Attorneys and Law Firms**

Rafael Messa, pro se.

Hon. Andrew M. Cuomo, Office of Attorney General State of
New York, Stephen M. Kerwin, Esq., of Counsel, Albany, NY.

*ORDER*

DAVID E. PEEBLES, United States Magistrate Judge.

**\*1** Presently before the Court is a motion to compel
discovery filed by Rafael Messa ("Messa" or "Plaintiff")
pursuant to Fed. R. Civ. Proc. 37. Dkt. No. 27.

A. *BACKGROUND*
Plaintiff filed this action on March 23, 2007. Dkt. No. 1. In his
complaint, Plaintiff alleges causes of action based upon use
of excessive force, denial of medical care, the recording of
false statements, and failure to properly document Plaintiff's
injuries in his medical records. Plaintiff further alleges
that Defendant Woods, the Superintendent of the Upstate
Correctional Facility ("Upstate"), supported and condoned
the use of force and the recording of false statements. The
claims arise from two events occurring on September 14,
2005 and September 15, 2005 at Upstate. *Id.* Defendants
answered the complaint on June 8, 2007. Dkt. No. 17.

B. *PLAINTIFF'S MOTION TO COMPEL DISCOVERY*
Plaintiff filed his motion to compel discovery on April 7,
2008. Dkt. No. 27. Plaintiff's motion addresses request for
production of documents served on November 29, 2007,
and interrogatories that were served on December 4, 2007

and February 8, 2008. On April 10, 2008 the Court granted
Defendants an extension of time to respond to the motion to
compel. Dkt. No. 29. Defendants filed their response to the
motion on May 8, 2008. Dkt. No. 32.

1. *Standard to Be Applied*
The scope of permissible discovery in a civil action pending
in a federal district court is defined, in the first instance, by
rule which provides, in pertinent part, as follows:

> Parties may obtain discovery
> regarding any nonprivileged matter
> that is relevant to any party's claim
> or defense-including the existence,
> description, nature, custody, condition,
> and location of any documents or
> other tangible things and the identity
> and location of persons who know
> of any discoverable matter. For good
> cause, the court may order discovery
> of any matter relevant to the subject
> matter involved in the action. Relevant
> information need not be admissible
> at the trial if the discovery appears
> reasonably calculated to lead to the
> discovery of admissible evidence.

Fed.R.Civ.P. 26(b)(1). When applying this standard in a case
such as this, the Court must be mindful that "actions alleging
violations of § 1983 require especially generous discovery."
*Cox v. McClellan,* 174 F.R.D. 32, 34 (W.D.N.Y.1997)
(citing *Inmates of Unit 14 v. Rebideau,* 102 F.R.D. 122,
128 (N.D.N.Y.1984) (Foley, J.)). When addressing a party's
resistence to discovery requests propounded by an adversary,
a court must also give recognition to the precept that:

> [a]n objection to a document request
> must clearly set forth the specifics
> of the objection and how that
> objection relates to the documents
> being demanded. The burden is on the
> party resisting discovery to clarify and
> explain precisely why its objections
> are proper given the broad and
> liberal construction of discovery rules

2008 WL 2433701

found in the Federal Rules of Civil Procedure.

**\*2** *Obiajulu v. City of Rochester, Dep't of Law,* 166 F.R.D. 293, 295 (W.D.N.Y.1996) (internal citations omitted).

2. *Plaintiff's Document Demands*

In his motion, Plaintiff takes issue with Defendants' response to document demands 2, 3, 6, 7, 8, and 9. Dkt. No. 27, Nov. 29, 2007 Demand to Kerwin.

Demand 2 sought the production of "all documents that contain, mention, construe, or refer to policies on correctional staff supervision, escorting of inmates at the Upstate Correctional Facility ("Upstate")." *Id.* Defendants objected to this demand as "over-broad and as unduly burdensome since it is unlimited as to time. Dkt. No. 32, Ex. A. In Plaintiff's January 18, 2008 letter to Defendants' counsel, Plaintiff stated "To clarify and/or minimize this request, what was the policy on September 15, 2005 in regards to correctional staff supervision for the escorting of inmates confined under Special Housing Unit status at Upstate, i.e. escorting for urinalysis." Dkt. No. 27, Jan. 18, 2008 Letter to Kerwin.

In their response to the Motion, Defendants now state that "to the extent that the plaintiff is seeking documents embodying a policy existing as of September 15, 2005 at Upstate for escorting SHU inmates to urinalysis testing ... I will produce any documents responsive to this demand as modified by the plaintiff so long as any responsive document is generally permitted by DOCS to be provided to inmates." Dkt. No. 32, Kerwin Affirmation at ¶ 13.

However, Defendants' response brings no resolution to this dispute. Defendants' time to substantiate or justify any objection to the demand was in their response to this motion. Defendants offer this Court no evidence that they have, in fact, produced the responsive documents, nor have they offered any proof to substantiate any basis for withholding the documents from Plaintiff on this motion.[1] Accordingly, the responsive documents shall be produced to Plaintiff within thirty (30) days from the filing date of this Order.

[1]      Counsel is well aware that if he intends to assert safety or security as a basis for withholding discovery from a party, it is his obligation to come forward, in response to this motion, with

evidence addressing the basis for withholding any specific directive, policy, or other document. Discovery may not be denied on the basis of an unsubstantiated assertion by counsel that disclosure of requested information might impair facility security. Rather, in order to counter the strong federal policy of disclosure of relevant information, Defendants must make a "substantial threshold showing" that there are "specific harms likely to accrue from disclosure of specific materials." *King v. Conde,* 121 F.R.D. 180, 189 (E.D.N.Y.1998). The required threshold showing may be in the form of a declaration of a responsible official who is neither a Defendant nor an attorney for a defendant after independent review of the requested materials. *See Melendez v. Greiner,* No. 01 Civ. 07888, 2003 WL 22434101, at * 5 (S.D.N.Y. Oct.23, 2003) (citing cases).

Demand 3 sought the production of "all documents that contain, mention, construe, or refer to policies on correctional staff use of force on inmates at Upstate." Dkt. No. 27, Nov. 29, 2007 Demand to Kerwin. Defendants object to this demand as vague, over broad and unduly burdensome. Dkt. No. 32, Ex. A. In Plaintiff's January 18, 2008 letter to Defendants' counsel, Messa stated "To clarify and/or minimize this request, please produce the written policy regarding correctional staff use of force on inmates at Upstate as it was in September of 2005." Dkt. No. 27, Jan 18, 2008 Letter to Kerwin. In their response to the Motion, Defendants now state that they do not waive their objection as to vagueness, overbreadth and burden, but that they "will produce any DOCS directive responsive to this demand as modified so long as the directive is classified by DOCS as being one of those which can be made available to inmates without compromising the safety and security of the prisons DOCS operates (commonly referred to as "A & B Directives")". Dkt. No. 32, Kerwin Affirmation at ¶ 14.

**\*3** Once again, Defendants' response brings no resolution to this dispute. Defendants offer this Court no evidence that they have, in fact, produced the responsive documents. Rather, it appears from counsel's responses to the motion that he has not made any effort to investigate whether any such directives exist. Moreover, as with Demand 2, Defendants and their counsel have offered no evidence to substantiate any basis for withholding the documents from Plaintiff. Defendants' time to substantiate or justify any objection to the demands has passed. Accordingly, the responsive documents shall be

2008 WL 2433701

produced to Plaintiff within thirty (30) days from the filing date of this Order.

Demand 6 sought production of "all use of force reports that evidence, mentioned, or refer to use(s) of force on any/all inmates whereas Defendants J. Hyde, N. Guerin, M. Kemp, and K. Eddy have been involved/named since September of 2003 and September 2007. *Note:* For the purposes of security, confidentiality, etc. all identifying information of any inmates or other correctional staff other than the Defendants may be redacted from the use of force reports." Dkt. No. 27, Nov. 29, 2008 Demand to Kerwin. Defendants object to this demand as prejudicial, vague, over broad and unduly burdensome and not likely to lead to the discovery of admissible evidence. Dkt. No. 32, Ex. A. In Plaintiff's January 18, 2008 letter he advised Defendants' counsel that "To clarify and/or minimize this request, Have any of the Defendant(s) been involved in any other uses of force on inmates between September 2003 and September 2007? If the answer is yes, name said Defendant(s) and please produce the use of force form in a redacted state or security and confidentiality, etc. removing by any means necessary all identifying information of any inmates or other correctional staff other than the Defendants(s)." Dkt. No. 27, Jan. 18, 2008 Letter to Kerwin.

In their response to this Motion Defendants maintain the objections they previously asserted, and added that "[e]vidence of such other occasions is no more relevant to the issues in this action than are the facts of the crimes for which plaintiff is serving a term of imprisonment." Dkt. No. 32, Kerwin Affirmation at ¶ 15.

The Court sustains the Defendants' objection with respect to Defendants Woods, Hyde, Buffham, and Dabiew. Plaintiff's complaint does not contain specific allegations that any of these Defendants used excessive force. Dkt. No. 1. However, those specific allegations are present with respect to Defendants Guerin, Kemp and Eddy. *Id.* Accordingly, the Court directs that a response to the clarified demand be produced with respect to Defendants Guerin, Kemp and Eddy. [2] However, the time frame of the clarified demand shall be read to cover the period from September 2003 through September 2005.

[2]    As stated in *Melendez,*

    [t]o the extent other inmates' grievances or complaints allege conduct similar to that alleged in the Complaint, and were similarly directed against any of the named

defendants, the documents sought may well yield information relevant to the [plaintiff's] claims, and such documents are therefore discoverable. *See, e.g, Cox v. McClelan,* 174 F.R.D. 32, 34 (W.D.N.Y.1997) (permitting discovery of prior similar complaints against defendants); *Malsh v. New York City Police Dep't,* No. 92 Civ. 2973, 1995 U.S. Dist. LEXIS 4663, 1995 WL 217507, at *1-2 (S.D.N.Y.Apt.11, 1995) (discovery of prior complaints and disciplinary actions against defendants was relevant to show "pattern, intent, absence of mistake, etc.") (quoting *Ismail v. Cohen* [sic]; 899 F.2d 183, 188 (2d Cir.1990)); *Hurley v. Keenan,* No. 79 Civ. 4772, 1984 U.S. Dist. LEXIS 16888, 1984 WL 358, (S.D.N.Y. May 8, 1984) (permitting discovery of prior administrative, civil, and criminal actions as relevant and potentially admissible to demonstrate defendants' intent and credibility and supervisory knowledge of misconduct).

*See Melendez,* 2003 WL 22434101, at *3. Past complaints against these Defendants regarding the use of excessive force could be used by Plaintiff to attack credibility of these Defendants or to impeach their testimony, or to demonstrate that the supervisory Defendants had notice of the correctional officers' alleged past actions. *See also, Martinez v. Thompson,* 9:04-CV-0440 (N.D.N.Y.) (FJS/DEP), Dkt. No. 69.

Demand 7 sought the production of "all documents written or created since September of 2003 and September of 2007 that contain, mention, construe, or refer to any inspection, inquiry, or complaint of unnecessary use(s) of force by the individual Defendant(s) whether formal or informal, official or unofficial, including inmate, staff or civilian grievances, complaints and appeals, and including responses to such documents prepared by DOCS staff or their agents. *Note:* For the purposes of security, confidentiality, etc. all identifying information of any inmates or other correctional staff other than the Defendants may be redacted from the use of force reports." Dkt. No. 27, Nov. 29, 2007 Demand to Kerwin. Defendants objected to this demand as vague, overbroad, and unduly burdensome. Dkt. No. 32, Ex. A. In Plaintiff's January 18, 2008 letter to Defendants, Plaintiff stated "To clarify and/or make minimize this request, please produce all documents written since September 2003 and September 2007 whereas any other inmate has complained of unnecessary use(s)

of force by the individual Defendants, whether form or informal, official or unofficial, including those made by inmate, staff, or civilian, complaints and appeals, including the responses prepared by Defendant(s) or other DOCS staff or their agents. Again these can be redacted for security and confidentiality, etc. removing by any means necessary all identifying information of any inmates or other correctional staff other than the Defendant(s)." Dkt. No. 27, Jan. 18, 2008 Letter to Kerwin.

**\*4** As with Demand 6, the Defendants asserted the additional relevancy objection to Demand 7 in their response to this Motion. Dkt. No. 32. As noted above, that objection is proper except as to Defendants Guerin, Kemp and Eddy. However, the clarified demand remains overbroad as written. Accordingly, the demand that Defendants shall answer shall be limited to grievances, filed by inmates, between September 2003 and September 2005, alleging use of excessive or unnecessary force by Defendants Guerin, Kemp and Eddy.

Demand 8 sought the production of "all documents written or created since September of 2003 and September 2007 that contain, mention, construe, or refer to any inspection, inquiry, or complaint of inadequate medical care and/or failure to document inmate injuries after use(s) of force, by the individual Defendant(s), whether formal or informal, official or unofficial, including inmates, staff, or civilian grievances, complaints and appeals, and including responses to such documents prepared by DOCS staff or their agents. *Note:* For the purpose of security, confidentiality, etc all identifying information of any inmates or other civilian staff other than the Defendants maybe redacted from the inadequate medical care and/or documents where the failure to document inmate injuries after use(s) of force are alleged." Dkt. No. 27, Nov. 29, 2007 Demand to Kerwin. Defendants object to this demand as vague, overbroad and unduly burdensome. Dkt. No. 32, Ex. A. In Plaintiff's January 18, 2008 letter he stated "The question is clear & straight forth, is not vague, over broad, or unduly burdensome, unless the Defendant(s) have a propensity for supplying inadequate medical care and/or a failure to document inmate injuries after use(s) of force." Dkt. No. 27, Jan. 18, 2008 Letter to Kerwin.

Defendants have asserted the same objections as noted with respect to the prior two demands. The Court sustains Defendants' objections except as to Defendants Buffham and Dabiew. However, given the allegations in the Complaint, Defendants may further limit their response. With respect to Defendant Buffham, the complaint alleges failure to record

Plaintiff's medical complaints and failure to log injuries she observed. Plaintiff's allegations against Defendant Dabiew are that he entered false information in Plaintiff's medical records and failed to record the nature of Plaintiff's injuries sustained from an officer's use of force. Accordingly, Defendants shall produce all inmate grievances, filed between September 2003 and September 2005, that allege that (1) Defendant Buffham failed to record an inmate's medical complaints or failed to log injuries she observed, and (2) Defendant Dabiew entered false information in an inmate's medical records or failed to record the nature of an inmate's injuries sustained by an officer's use of force.

Demand 9 sought the production of "all audio and visual recordings, regardless of how produced, i.e. video, DVD, cassette, etc., that evidence [sic] the use(s) of force and/or incidents involving Mr. Messa on the days of September 14, 2005 and September 15, 2005 and the incidents of such days that resulted in the DOCS misbehavior reports received by Mr. Messa on said days." Dkt. No. 27, Nov. 29, 2007 Demand to Kerwin. Defendants responded that they "will make available for plaintiff's viewing at his current correctional facility the videotape recording of the incident of 9/14/05 at approximately 6:45 am at Upstate Correctional Facility building 11, A-34 cell." Dkt. No. 33, Ex. A. Plaintiff's January 18, 2008 letter to Defendants' counsel stated that this response is objected to in part because Defendants only made the video of the September 14, 2005 incident available, and have not produced the recording of the September 15, 2005 incident. Dkt. No. 25, Jan. 18, 2008 Letter to Kerwin. In a supplemental response to this Motion, Defendants' counsel states that he located the videotape of the September 15, 2007 incident, and submitted a receipt showing that Plaintiff has had an opportunity to review the videotape. Dkt. No. 33. Thus, this demand has now been satisfied.

### 3. *Plaintiff's Interrogatories*

**\*5** Plaintiff's Motion to Compel states that he served a total of three sets of interrogatories on Defendant Woods,[3] two sets of Interrogatories on Defendants Guerin, Kemp and Dabiew,[4] and one set of Interrogatories on Defendants Hyde, Eddy and Buffham.[5] The Motion further states that Plaintiff did not receive a response to Defendant Woods third set of interrogatories, the second set of Interrogatories served on Dabiew, Kemp and Guerin, and the first set of Interrogatories served on Buffham. Plaintiff further objects to the delay in the responses served by Defendants Hyde and Eddy. Plaintiff states that such delay has hindered his ability

2008 WL 2433701

to serve follow-up Interrogatories or address objections raised by the Defendants. Finally, Plaintiff objects to Defendant Eddy's response to interrogatory number 8.

[3]     Served on December 4, 2007 (two sets) and February 8, 2008

[4]     Served on December 4, 2007 and February 8, 2008

[5]     Served on December 4, 2007

Defendants answered the Interrogatories directed to Defendants Woods, [6] Guerin, Kemp and Dabiew on January 30, 2008. Dkt. No. 32, Ex. B-E. Counsel's letter stated that he was "still working" on responses to the Interrogatories for Defendants Buffham and Eddy. Dkt. No. 27, Jan. 30, 2008 Letter to Messa. On February 8, 2008 Plaintiff wrote to Defendants' counsel seeking a response to the December Interrogatories served on Defendants Eddy, Hyde, and Buffham. Dkt. No. 27, Feb. 8, 2008 Letter to Kerwin. On March 13, 2008 counsel served a response to the December Interrogatories served on Defendants Hyde and Eddy. [7] The March 13, 2008 letter stated that counsel was "still working" on responses to Defendant Buffham's December 4, 2007 Interrogatories. [8] Dkt. No. 27, March 13, 2008 Letter to Messa. As of the filing of this Motion, Plaintiff had not received responses to the third set of interrogatories served on Defendant Woods, the second set of Interrogatories served on Defendants Guerin, Kemp and Dabiew, or the first set of interrogatories served on Buffham.

[6]     Woods responded to the first two sets of Interrogatories.

[7]     Discovery closed in this case on February 29, 2008. Dkt. No. 23.

[8]     The Court notes with disapproval that at no time did counsel have the consent of Plaintiff to the repeated delay in responding to discovery, nor did counsel seek an order from this Court extending Defendant's response time. In the future counsel is advised that he is expected to either comply with the time lines established by the Federal Rules of Civil Procedure and the orders of this Court, or seek an order from this Court extending such deadlines.

In response to the Motion, Defendants' counsel asserts that "While the plaintiff maintains in his motion that he still has not received some of those responses, all defendants have

served on him their responses to all interrogatories served by plaintiff." Dkt. No. 32, Kerwin Affirmation at ¶ 20. What counsel glosses over is the fact that the responses were served between April 16, 2008 and April 25, 2008, well after Plaintiff served his Motion to Compel on March 26, 2008. Dkt. No. 32., Ex. I-L.

With respect to Plaintiff's specific objection to Defendant Eddy's response to Interrogatory 8, counsel stands on his objection. Dkt. No. 32. That interrogatory reads:

> Please describe in as much detail as possible the complete circumstances surrounding all other instances in which you have been involved in the use of force, or threatened to do so, while working as an employee of DOCS. Include in your response the circumstances surrounding any review or disciplinary action that occurred after each actual or threatened application of force.

Defendant's objection to the demand is that it is overbroad, unduly burdensome, vague, designed to annoy and harass this Defendant, and not likely to lead to the discovery of admissible evidence. Dkt. No. 32, Kerwin Affirmation.

**\*6** Based upon this Court's discussion of *Melendez v. Greiner, supra* at note 2, the Court rejects that portion of the objection dealing with the discovery of admissible evidence. Moreover, given the allegations in the complaint against Defendant Eddy, the Court does not find the demand to be unreasonable, over broad, vague or unduly burdensome. Finally, should Defendants require clarification as to the issue of disciplinary action or review, the Defendant should read the demand to include both disciplinary action against the inmate involved and disciplinary action against the Defendant Eddy.

### 4. *Request for Sanctions*

Finally, Plaintiff seeks sanctions against the Defendants for their delay in this action. In response counsel states "Admittedly, some of the defendants' responses to plaintiff's discovery demands were tardy. This was done in an effort to frustrate the plaintiff's discovery." Dkt. No. 32, Kerwin Affirmation at ¶ 22. Given the context of the paragraph, the

2008 WL 2433701

Court will presume that counsel inadvertently omitted the word "not." Counsel further lists a litany of reasons why access to the Defendants was impeded, and notes that he has no objection to an extension of discovery to afford Plaintiff additional time to serve appropriate discovery.

As the Court noted above, counsel's obligation is to seek an extension from this Court when he is unable to meet deadlines imposed by the Federal Rules of Civil Procedure or orders of this Court. Counsel has offered no explanation for his failure in this regard. Further, it is clear that counsel's actions ***have*** frustrated discovery in this action, whether intentional or not. Moreover, counsel's actions have caused unnecessary delay and Court intervention is this action.

Accordingly, counsel is advised that all documents produced in response to the demands in this Order shall be produced *without* expense to Plaintiff. Further, all documents responsive to the demands addressed above, as well as a response to the unanswered Interrogatory, shall be provided to Plaintiff within *thirty (30) days* from the filing date of this Order. Plaintiff's demand for monetary sanctions is otherwise denied, without prejudice, subject to renewal in the event Defendants fail to comply with this Order.

Further, discovery will be reopened for the limited period of **ninety (90) days** from the filing date of this Order. Plaintiff shall serve his remaining discovery forthwith. Defendants shall timely respond to all discovery demands served by Plaintiff. Any motion to compel discovery shall be filed no later than **twenty (20) days** following the end of the limited discovery period provided for in this Order.

WHEREFORE, based upon the above, it is hereby

ORDERED, that Plaintiff's motion to compel (Dkt. No. 27) is GRANTED in part, and DENIED in part, as detailed above. Defendants shall comply with the terms of this Order within *thirty (30) days* from the filing date of the Order, and it is further

 **\*7**  ORDERED, Plaintiff's request for sanctions is DENIED, without prejudice, and subject to renewal in the event Defendants fail to comply with this Order, and it is further

ORDERED, that within **thirty (30) days** from the filing date of this Order, Defendants' counsel shall file an Affidavit of Service with the Court showing that the documents required to be produced under this Order have, in fact, been provided to Plaintiff, and it is further

ORDERED, that discovery is reopened for the limited period ending ***ninety (90) days*** from the filing date of this Order. **No extensions of the discovery deadline shall be granted,** and it is further

ORDERED, that motions to compel shall be filed no later than ***twenty(20) days*** following the close of discovery, and it is further

ORDERED, that dispositive motions shall be filed on or before November 24, 2008, and it is further

ORDERED, that the Defendants shall comply with all time limits established by the Federal Rules of Civil Procedure and the Orders of this Court, and it is further

ORDERED, that the Clerk serve a copy of this Order on the parties in accordance with the Local Rules.

IT IS SO ORDERED.

**All Citations**

Not Reported in F.Supp.2d, 2008 WL 2433701

---

**End of Document**                    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

**Filings (1)**

| Title | PDF | Court | Date | Type |
|---|---|---|---|---|
| **1. Docket 9:07cv00306**<br>MESSA v. WOODS ET AL | — | N.D.N.Y. | Mar. 23, 2007 | Docket |

**WESTLAW**   © 2025 Thomson Reuters. No claim to original U.S. Government Works.

**History (2)**

**Direct History (1)**

1. Messa v. Woods 🔑
2008 WL 2433701 , N.D.N.Y. , June 12, 2008

**Related References (1)**

2. Messa v. Woods
2009 WL 3076120 , N.D.N.Y. , Sep. 23, 2009

WESTLAW   © 2025 Thomson Reuters. No claim to original U.S. Government Works.

2015 WL 4648056
Only the Westlaw citation is currently available.
United States District Court,
W.D. New York.

Stephan GAGNE, Plaintiff,
v.
C.O. FIX, et al., Defendants.

No. 11CV361A.
|
Signed Aug. 5, 2015.

**Attorneys and Law Firms**

Stephen Gagne, Dannemora, NY, pro se.

**Order**

HUGH B. SCOTT, United States Magistrate Judge.

**\*1** Before the Court is the plaintiff's motion to compel. (Docket No. 43).

**Background**

The plaintiff commenced this action, asserting various claims against 33 defendants who are either employed at the Attica Correctional Facility ("Attica") or the administrative office of the New York State Department of Correctional Services ("DOCCS")[1] including: C.O. Fix ("Fix"); C.O.Pritchard ("Pritchard"); C.O. George ("George"); C.O. Radimaker, Sr. ("Rademaker, Sr."); C.O. Radimaker, Jr. ("Radimaker, Jr."); C.O. Bosworth ("Bosworth"); C.O. John Doe # 1, C.O. John Doe # 2; C.O. John Doe # 3; Sergeant Corcoran ("Corcoran"); Sergeant Taborski ("Taborski"); Superintendent J. Conway ("Conway"); Dep. Security Chapius ("Chapius"); I.G.P. Supervisor Struebel ("Struebel"); Correction Counselor Whiteford ("Whiteford"); P.A. Graf ("Graf"); P.A. John Does; P.A. Jane Does; R.N.Turton ("Turton"); R.N. John Does; R.N. Jane Does; M.D. John Does; M.D. Jane Does; Commissioner Brian Fischer ("Fischer"); Deputy Commissioner LeClaire ("LeClaire"); Counsel William Gonzalez ("Gonzalez"); Galyn Schenk ("Schenk"); I.G.R. Roy ("Roy"); CORC Director Bellamy ("Bellamy"); CORC Director Egan ("Egan"); and the NYSDOCCS.[2]

[1]    The plaintiff identified this entity as the New York State Department of Correctional Services. (Docket No. 1 at page 3). This state agency is now referred to as the New York State Department of Corrections and Community Supervision ("DOCCS").

[2]    The plaintiff also named Deputy Commissioner K. Decker and A.D.A Donna Masterson D'Aloia as defendants. These defendants were removed from the caption inasmuch as the complaint contained no allegations against them. (Docket No. 4 at page 25).

The plaintiff claims that he is a qualified person with a disability who suffers from degenerative disc disease, peripheral arterial disease, and cardiac issues which have required triple by-bass surgery and stints inserted in his heart. In addition, Gagne asserts that he is a diabetic and that he suffers from sciatica and other back issues causing him to ambulate with a cane. (Docket No. 1 at page 5). The plaintiff asserts several wide-ranging claims, which District Court Judge Michael Telesca described as "unduly discursive" and "difficult to decipher." (Docket No. 4 at page 2). Several of the plaintiff's claims were dismissed by Judge Telesca upon initial review. Further claims were dismissed as a result of a motion brought by the defendants (Docket No. 29). The remaining claims appear to be those portions of Claim 3 which did not arise out of the same facts as the claims the plaintiff asserted in a prior lawsuit, Claim 4 and Claim 6.

**Motion to Compel Discovery**

The plaintiff has filed a motion to compel (Docket No. 43) the defendants to respond to a request for discovery filed on November 13, 2014. (Docket No. 37). The plaintiff argues that the defendants did not properly respond to Requests 2, 3, 4, 5, 8 and 9 of his document demand. (Docket No. 43, pages 4–6).

In Request No. 2 request, the plaintiff seeks copies of any complaints, including all grievances, filed by inmates against defendants Pritchard, Radimacher and Bosworth. (Docket No. 37 at ¶ 2). The defendants object to the request on the grounds that it is overly broad, unduly burdensome and not relevant to the issues in this lawsuit. (Docket No. 41 at page 5). Copies of complaints and grievances filed by inmates other than the plaintiff and relating to claims not at issue in this action are not, without more, relevant to the issues in this lawsuit. If not already produced, the defendants shall produce

2015 WL 4648056

copies of all complaints and grievances filed by the plaintiff against the defendants relating to the claims in the instant complaint.

**\*2** In Request No. 3, the plaintiff seeks copies of the complete personnel files for defendants Pritchard, Radimacher and Bosworth. (Docket No. 37 at ¶ 3). The plaintiff also seeks copies of the personnel files of a defendant he identifies as "George Heltz"[3] (Docket No. 43 at ¶ 13). The defendants again object to these requests but stated that upon review of these files, there are no documents relating to disciplinary action taken against these defendants based upon a use of force against the plaintiff on May 8, 2009. (Docket No. 41 at page 6). The defendants also oppose the request on the ground that the information sought is protected by § 50–a of the New York State Civil Rights Law. (Docket No. 41 at page 6). In federal civil rights cases, issues of privilege are governed by federal, not state, law. It is undisputed that under federal law, New York Civil Rights Law § 50–a does not prohibit discovery of police personnel documents. *Martin v. Lamb,* 122 F.R.D. 143, 146 (W.D.N.Y.1988). That does not mean that the state statute is to be given no effect. According to the New York State Court of Appeals, the legislative intent underlying the enactment of § 50–a was enacted to prevent time consuming and perhaps vexatious investigation into irrelevant collateral matters in the context of a civil or criminal action, and to avoid embarrassment and harassment of testifying officers by cross-examination concerning "unsubstantiated and irrelevant" matters in their personnel files. *See Matter of Capital Newspapers v. Burns,* 67 N.Y.2d 562, 505 N.Y.S.2d 576, 496 N.E.2d 665 (1986). Generally, the Court will direct the production of documents contained in the personnel file of an officer only if the documents are relevant and involved disciplinary action taken against the officer. *See Diaz v. Goord,* 2007 WL 2815735 (W.D.N.Y.2007) (Payson, M.J.) (directing disclosure of documents relating to disciplinary action imposed on the defendants in connection with allegation of excessive force); *Wright v. Goord,* 2008 WL 2788287 (W.D.N.Y.2008) (Payson, M.J.) (directing search of personnel files for documents relating to disciplinary action taken against defendants based upon the use of excessive force). It is unlikely that documents relating to unsubstantiated claims of excessive force would lead to admissible evidence. *See Crenshaw v. Herbert,* 409 Fed.Appx. 428 (2d. Cir.2011) (the district court did not abuse its discretion by denying plaintiff's motion to compel production of defendant's personnel file; the court properly relied on defense counsel's affirmation that the file contained

no relevant disciplinary records; even if evidence of a prior *substantiated* excessive force investigation existed, on the facts of the particular case before us such evidence would be inadmissible to show that defendant acted violently in this instance). *Crenshaw,* 409 Fed.Appx. at 430 citing Fed.R.Evid. 404(b). *See* also *DiRico v. City of Quincy,* 404 F.3d 464 (1st Cir.2005) (district court in arrestee's § 1983 action against police officer for injuries sustained in arrest did not plainly err in excluding evidence of an earlier arrest by officer that resulted in a complaint of use of excessive force; evidence had no special relevance to any issue in action, evidence relating to a single, unsubstantiated claim of use of excessive force had limited probative value, and admission would have created danger that jury would render verdict on improper basis that officer was prone to engaging in violent behavior.). In light of the above, the defendants are directed to produce only those documents relating to any claims of excessive use of force involving these individual defendants which have been substantiated upon the conclusion of an internal administrative investigation or court proceeding.

[3]    It appears that this individual was named as "C.O. George" in the complaint (Docket No. 1). In his document demand, the plaintiff identified this individual only as "George." (Docket No. 37 at ¶¶ 8–9).

**\*3** The plaintiff also seeks, in Request No. 4, copies of "all arrest records for Pritchard and Radimacher" including criminal complaints, indictments, statements and Inspector General reports pertaining to a "gang assault" for which Pritchard and Radimacher were allegedly arrested. (Docket No. 37 at ¶ 4). The defendants argue that this information is not relevant to the claims in this case. Moreover, the defendants contend that these are public records which are accessible to the plaintiff (and that the plaintiff already possesses at least some of these documents). (Docket No. 41 at page 6). To the extent that any such documents are contained in the personnel files of Pritchard and Radimacher reflecting a substantiated claim of the use of excessive force by Pritchard and Radimacher against an inmate, these documents (including arrest documents and Inspector General reports) are to be produced pursuant to both Request No. 3 and Request No. 4. If these documents do not relate to a substantiated use of excessive force by Pritchard and Radimacher, no further response by the defendants is required.

With respect to Request No. 5, the plaintiff seeks information "concerning the nurse who witnessed the assault of

2015 WL 4648056

[another inmate]'s injuries, was instrumental in providing the information that led to the arrest of defendant Radimacher for gang assault." (Docket No. 43 at ¶ 12). The defendants have responded that the plaintiff's reference to a "gang assault" is vague and ambiguous. In addition, the defendants assert that any statements made by the nurse concerning the medical care of another inmate are protected by HIPPA and cannot be produced. (Docket No. 45 at ¶ 20). The record before the Court does not clarify the relevance of any documents relating to the nurse. The defendants are correct that the HIPPA laws would preclude the nurse from revealing any information relating to the injuries sustained or medical treatment received by another inmate who is not a party to this action. Further, the plaintiff has not articulated how any statements or information

from this nurse are relevant to his claims in this case. The defendants need not respond further to this request.

### Conclusion

Based on the above, plaintiff's motion to compel is granted in part and denied in part, consistent with the above.

So Ordered.

### All Citations

Not Reported in F.Supp.3d, 2015 WL 4648056

---

End of Document

© 2025 Thomson Reuters. No claim to original U.S. Government Works.

**Filings (1)**

| Title | PDF | Court | Date | Type |
|---|---|---|---|---|
| **1. Docket 1:11cv00361**<br>GAGNE v. FIX | — | W.D.N.Y. | Apr. 28, 2011 | Docket |

**WESTLAW**  © 2025 Thomson Reuters. No claim to original U.S. Government Works.

**History (3)**

**Direct History (1)**

  1.  Gagne v. Fix
      2015 WL 4648056 , W.D.N.Y. , Aug. 05, 2015

**Related References (2)**

  2.  Gagne v. Fix
      2014 WL 950130 , W.D.N.Y. , Mar. 11, 2014

  3.  Gagne v. Fix
      2017 WL 4552558 , W.D.N.Y. , Oct. 11, 2017

WESTLAW © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Case 9:23-cv-01472-MAD-MJK    Document 73    Filed 04/02/25    Page 34 of 39

Johnson v. Miller, Not Reported in Fed. Supp. (2021)

2021 WL 4803647

2021 WL 4803647
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Angelo D. JOHNSON, Plaintiff,
v.
C. MILLER, et al., Defendants.

No. 9:20-CV-622 (LEK/ATB)
|
Signed 09/02/2021

**Attorneys and Law Firms**

ANGELO D. JOHNSON, Plaintiff Pro Se.

JONATHAN S. REINER, ASST. ATT'Y GEN., for
Defendant.

### DECISION AND ORDER

Andrew T. Baxter, United States Magistrate Judge

 **\*1** On July 8, 2021, pro se plaintiff filed a letter motion to
compel the defendants to produce certain items in discovery
relating to the civil rights claims arising from his confinement
in the Great Meadow Correctional Facility ("Great Meadow")
between October 29, 2018 and January 16, 2020. (Dkt. No.
51) As directed by the court, the defendants responded in
opposition to the motion. (Dkt. No. 57).

Plaintiff first seeks all "body-camera footage," apparently
relating to the various incidents referenced in the complaint.
(Dkt. No. 51 at 1). [1] Defense counsel's response, supported
by an affidavit of Armand Caringi, the Director of Security
Services ("DSS") at Great Meadow (Dkt. No. 57-1),
represents that the only video footage still available with
respect to the events referenced in plaintiff's complaint relates
to an incident on July 10, 2019. [2] Defense counsel states that
this video footage was made available to plaintiff on August
26, 2021. The court cannot compel defendants or the New
York Department of Corrections and Community Supervision
("DOCCS") to produce other video evidence when DOCCS
has determined, after reasonable inquiry, that it no longer
exists.

[1]    The July 29, 2020 Decision and Order of
Senior District Judge Larry Kahn summarizes
the allegations in the complaint about various
incidents, at Great Meadow, of medical
indifference, excessive force, improper body
cavity searches, illegal conditions of confinement,
due process violations relating to disciplinary
proceedings, and racial discrimination allegedly
committed by the remaining 16 defendants in this
action. (Dkt. No. 8 at 5-13).

[2]    Plaintiff's complaint describes a series of events
on July 10, 2019, alleging intolerable conditions
of confinement in a SHU cell, which caused him
to suffer a seizure; efforts by various defendants
to suffocate and otherwise harm him while he
was fully constrained in the facility infirmary; and
his eventual return to his SHU cell. (Compl. ¶¶
122-129, Dkt. No. 1 at 38-41). Senior Judge Kahn's
July 29, 2020 Decision and Order describes some
of these events, but suggest that they occurred on
July 9, 2019. (Dkt. No. 8 at 11-12). The defense
submission did not detail which portion of the
events of July 10, 2019 are depicted on the video
footage that is still available.

Plaintiff alleges that the constitutional violations at Great
Meadow after July 10, 2019 involved indifferent medical
care, illegal conditions of confinement, and due process
violations relating to disciplinary proceedings against him.
(Compl. ¶¶ 130-139). [3] There are no subsequent allegations
of excessive force or other incidents at Great Meadow that
would likely be captured on body camera or other video
footage in the facility. Plaintiff filed his complaint in this
action on April 23, 2020, by which time other possible video
footage of relevant events during and prior to July 2019
would likely have been overwritten, in the ordinary course
of business, at Great Meadow. While not ruling out the
possibility that plaintiff could assert spoliation claims for the
failure of DOCCS to preserve other video evidence, his letter
brief provides no basis for spoliation sanctions. In any event,
absent evidence that the spoliation occurred after this court
began supervising discovery, plaintiff would need to seek
relief for alleged spoliation from Judge Kahn in connection
with dispositive motion practice and/or a trial.

[3]    Plaintiff alleged only one prior incident of
excessive against him at Great Meadow, on June
17, 2019. (See Dkt. No. 8 at 9-10).

Johnson v. Miller, Not Reported in Fed. Supp. (2021)

2021 WL 4803647

**\*2** Plaintiff's motion to compel also seeks disclosure of "audio ... transcripts," presumably of the disciplinary proceedings relating to his due process claims. (Dkt. No. 51 at 1). Defense counsel represents that a transcript of a disciplinary hearing conducted by defendant Murphy between June 23 and July 2, 2019, has been disclosed to plaintiff. A subsequent disciplinary proceeding involving plaintiff was conducted by defendant Collins in December 2019, and defense counsel represents that the written disposition of that proceedings was disclosed to plaintiff. (Dkt. No. 57 at 2). The written disposition (Dkt. No. 57-2 at 4) indicates that plaintiff refused to attend any hearing and that the disposition was based solely on written documentation, without any witness testimony. Defense counsel and DSS Caringi represent that there is no transcript of this later disciplinary proceeding. (Dkt. No. 57-1 ¶¶ 5, 7). Again, the court cannot compel production of evidence that does not exist.

Finally, plaintiff seeks disclosure of "formal complaints, grievances, lawsuits, and disciplinary actions against any or all defendants pursuant to all claims in Plaintiff['s] complaint up to 10 years of any and all complaints being asserted...." (Dkt. No. 51 at 1). Defense counsel argues that this request, for ten years of records relating to 16 defendants, is an unduly burdensome "fishing expedition" that is not proportional to the needs of the case. (Dkt. No. 57 at 2-3). Defendants also object that the disclosure of such information to a current DOCCS inmate may create privacy and security concerns, in that it seeks confidential information about other inmates and staff, which "information may be used by inmates to obtain leverage or influence over Defendants." (*Id.* at 3).

In support of the objections to plaintiff's demand for personnel and disciplinary information about the defendants, defense counsel relies on a body of case law in this Circuit ruling that "[g]enerally, the Court will direct the production of documents contained in the personnel file of an officer only if the documents are relevant and involved disciplinary action taken against the officer." *Gagne v. Fix*, No. 11-CV-361A, 2015 WL 4648056, at \*2 (W.D.N.Y. Aug. 5, 2015) (collecting cases including *Crenshaw v. Herbert*, 409 F. App'x. 428, 430 (2d. Cir. 2011) (the district court did not abuse its discretion by denying plaintiff's motion to compel production of defendant's personnel file; the court properly relied on defense counsel's affirmation that the file contained no relevant disciplinary records; even if evidence of a prior substantiated excessive force investigation existed, on the facts of the particular case before us such evidence would be

inadmissible to show that defendant acted violently in this instance)).

Other cases in this Circuit have articulated a more liberal standard for discovery of the personnel and disciplinary records of defendant Correction Officers in prisoner civil rights cases. *See, e.g., Hyatt v. Rock*, No. 9:15-CV-89 (DNH/DJS), 2016 WL 6820378, at \*3 (N.D.N.Y. Nov. 18, 2016) ("several courts in this District have held that other complaints of misconduct against a particular Defendant, either before or after the event which is the subject of a civil rights lawsuit, can be discoverable so long as the misconduct is similar to the constitutional violation alleged in the complaint or relevant to a defendant's truth or veracity") (collecting cases including *Gross v. Lunduski*, 304 F.R.D. 136, 146-47 (W.D.N.Y. 2014) (allowing discovery of unsubstantiated complaints of similar misconduct in prisoner civil right action)). However, the court must always take into account whether such discovery is proportional needs of a particular case, "considering the need and likely relevance of the discovery as well as the practical difficulties in producing the information." *Hyatt v. Rock*, 2016 WL 6820378, at \*4.

The court agrees with defense counsel that plaintiff's broad and unsupported demands for ten years of complaints, grievances, lawsuits, and disciplinary actions relating to all 16 remaining defendants is overly broad, burdensome, and not proportional to the needs of this particular case. *See, e.g., Hyatt v. Rock*, 2016 WL 6820378, at \*4 ("Considering the proportional needs of this case, the Court agrees that production of all complaints or grievances against any of the named Defendants for a period of over ten years is neither justified nor required."). However, keeping in mind the crucial importance of proportionality in federal discovery, the court will order the disclosure of several categories of documents that will be less burdensome to locate and produce and will be more likely to yield useful and potentially admissible evidence of other misconduct or credibility information with respect to the defendants. In doing so, the court will take steps to address the reasonable concerns of DOCCS regarding institutional security and the privacy interests of staff and other inmates.

**\*3** The court is aware, based on more than ten years of experience in addressing discovery disputes in prisoner civil rights cases in New York, that DOCCS inmates file a large volume of grievances, and most grievances and complaints are determined by DOCCS to be unfounded, which substantially reduces their probative value. Moreover,

Case 9:23-cv-01472-MAD-MJK    Document 73    Filed 04/02/25    Page 36 of 39

Johnson v. Miller, Not Reported in Fed. Supp. (2021)

2021 WL 4803647

the production of complaints and grievances by DOCCS is particularly burdensome because such documents are not indexed or filed by the individual correction officer(s) involved. *Hyatt v. Rock*, 2016 WL 6820378, at *4; *Diaz v. Goord*, No. 04-CV-6094, 2007 WL 2815735, at *1 (W.D.N.Y. Sept. 25, 2007). However, grievances or complaints that are determined to be "founded" and that result in the discipline of a correction officer, will have much greater probative force and may be located by DOCCS more readily in the personnel files of the individual officer.

Inmate complaints that are sufficiently serious to be referred for investigation to the DOCCS Office of Special Investigations ("OSI") (formerly the DOCCS Inspector General ("IG")) generally prove to be more probative than complaints that are not referred. Moreover, the OSI/IG reports are readily located by reference to the name of the officer(s) who are the subject of the investigation. Finally, while prisoners bring many civil rights actions that prove to be frivolous, the records of such lawsuits are a matter of public record and have a greater potential to be probative than prisoner grievances alone. Pro se prisoners are limited in their ability to search and obtain public records relating to other lawsuits, and defendants who were parties to other lawsuits are in a better position to access related records.

Accordingly, based on the submissions of parties, and for the reasons stated above:

**IT IS HEREBY ORDERED**, that plaintiff's motion to compel (Dkt. No. 51) is **GRANTED IN PART**, in that the defendants and/or DOCCS are directed to disclose the following, for the time period between and including 2017 and 2020, subject to the claims of privilege and/or the entry of an appropriate protective order, restrictions on plaintiff's unfettered access to sensitive documents while in DOCCS custody, [4] and redactions, as necessary to address reasonable DOCCS concerns regarding institutional security or the privacy of inmates or staff other than the named defendants [5]:

[4]    For example, reports of DOCCS OSI/IG and records relating to any discipline of the named defendants may be made available for plaintiff to inspect only under staff supervision, but *without* supplying plaintiff with a copy to maintain in his cell. The court may direct that copies of any such relevant reports or records be provided if/when

counsel is appointed to assist plaintiff in connection with a trial.

[5]    Redactions related, *e.g.*, to confidential sources of information in connection with an investigation, would be appropriate. Redaction of the names of complaining inmates and witnesses may also be appropriate while plaintiff is representing himself and continues to be a DOCCS inmate. However, the court may require the disclosure of such names if/when counsel is appointed to assist plaintiff at a trial in this matter.

1. Any reports or other records relating to founded allegations of the types of misconduct specified below, as documented in the personnel files of the named defendants or the files of the DOCCS Office of Labor Relations, that resulted in the imposition of discipline against any named defendant. The categories of misconduct as to which such disclosure will be required are (a) founded claims of misconduct against inmates relating to the type(s) of misconduct alleged in the claims against each particular defendant, as documented in the attached chart entitled "Categories of Alleged Misconduct (by Defendant)" and (b) founded claims that a defendant made false claims or allegations, or provided false statements or testimony.

**\*4** 2. Any reports or other records of any investigation by the DOCCS Office of Special Investigations ("OSI") (formerly the DOCCS Inspector General ("IG")), relating to the incidents that are the subject of this action or the categories of misconduct referenced in paragraph 1, whether or not the allegations of misconduct were determined to be founded or substantiated.

3. The operative complaint(s) or charging instruments and document(s) reflecting the disposition of other lawsuits or criminal proceedings against any named defendant relating to the incidents that are the subject of this action or the categories of misconduct referenced in paragraph 1, whether or not there was an ultimate finding of liability on the part of the defendant(s).

Defendants and/or DOCCS are also required to disclose, to plaintiff, any personnel or other records relating to defendants' prior or subsequent job performance or disciplinary history, without restriction as to time period, to the extent the defendants will rely on them in defending this action.

Defense counsel shall advise plaintiff's counsel, in writing, as to which personnel, disciplinary, or OSI/IG documents or categories of documents are being withheld on privilege or other grounds, and the general nature of information withheld.[6] To the extent the parties, after good-faith negotiations, are unable to resolve any dispute as to which documents should be disclosed or the redactions to disclosed documents, the relevant materials shall be submitted to the court for in camera review.

[6]     Defense counsel does not need to log documents that were disclosed in redacted form.

Plaintiff's motion to compel (Dkt. No. 51) is otherwise **DENIED**, for the reasons stated above.

Defense counsel is directed to submit to the court, by September 20, 2021, a proposed deadlines for the disclosure of the documents required by this Order, after consultation with his clients and DOCCS regarding the logistics of searching for and producing those documents. Plaintiff or defense counsel may also propose, if necessary, extensions of other deadlines in this action.

**All Citations**

Not Reported in Fed. Supp., 2021 WL 4803647

---

**End of Document**

© 2025 Thomson Reuters. No claim to original U.S. Government Works.

**Filings (1)**

| Title | PDF | Court | Date | Type |
|---|---|---|---|---|
| **1.  Docket 9:20-CV-00622**<br>Johnson v. Brown et al | — | N.D.N.Y. | June 04, 2020 | Docket |

**History (5)**

**Direct History (1)**

1. Johnson v. Miller ✎
   2021 WL 4803647 , N.D.N.Y. , Sep. 02, 2021

**Related References (4)**

2. Johnson v. Miller
   2020 WL 4346896 , N.D.N.Y. , July 29, 2020

3. Johnson v. Miller
   2021 WL 4805425 , N.D.N.Y. , Aug. 09, 2021

4. Johnson v. Brown
   2022 WL 7288498 , N.D.N.Y. , May 12, 2022

   *Report and Recommendation Adopted by*

5. Johnson v. Brown
   2022 WL 4395995 , N.D.N.Y. , Sep. 23, 2022